# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

MOHAMED NUREIN,

|  | | |
|---|---|---|
| | Petitioner, | : |

Case No. 2:23-cv-3936

- vs -

District Judge Edmund A. Sargus, Jr.
Magistrate Judge Michael R. Merz

JAY FORSHEY, Warden,
  Noble Correctional Institution,

:

       Respondent.

---

# REPORT AND RECOMMENDATIONS

---

This is a habeas corpus case brought *pro se* by Petitioner Mohamed Nurein under 28 U.S.C. § 2254 to obtain relief from his conviction in the Union County Court of Common Pleas and his consequent prison sentence. The case was referred to the undersigned under General Order 22-05 for report and recommendations. The case is now ripe for decision on the Petition (ECF No. 1), the State Court Record (ECF No. 5, 8), the Respondent's Return of Writ (ECF No. 6), and Petitioner's Reply (ECF No. 9).

**Litigation History**

The Union County grand jury indicted Petitioner on charges of felonious assault in violation of Ohio Revised Code § 2903.11(A), two counts of endangering children in violation of

1

Ohio Revised Code § 2919.22(A), two counts of improperly discharging a firearm into a habitation in violation of Ohio Revised Code § 2923.161(A)(1), attempted aggravated burglary in violation of Ohio Revised Code § 2903.02, attempted trespass into a habitation in violation of Ohio Revised Code § 2923.02, tampering with evidence in violation of Ohio Revised Code § 2921.12(A), aggravated menacing in violation of Ohio Revised Code § 2903.21(A), and having weapons under disability[1] in violation of Ohio Revised Code § 2923.13(A)(3).  All counts except the last three carried a firearm specification.   All charges arose from the firing of a handgun into the dwelling of Petitioner's ex-spouse Zahra and two of his children.

The case was tried to a jury which convicted Petitioner on all counts.  After merger of some of the counts under Ohio Revised Code § 2941.25, the trial judge sentenced Petitioner to fifteen years, three months to eighteen years, three months imprisonment.

Through new counsel, Petitioner appealed to the Ohio Third District Court of Appeals, raising the following assignments of error:

> 1. The verdicts of the jury finding the Appellant guilty of violating R.C. 2903.11, 2919.22, 2923.161, 2911.11 and 2911.12, Counts 1 through 7, were contrary to the manifest weight of the evidence.
>
> 2. The evidence adduced at trial is insufficient as a matter of law to support Appellant's convictions on Counts 6 and 7, attempted aggravated burglary and attempted trespass into a habitation.
>
> 3. Appellant was deprived of his constitutional right to due process in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, when the trial court called the victim as a court witness, pursuant to Evid.R. 614.
>
> 4. Appellant was deprived of his constitutional rights to due process and to confront his accusers in violation of the Fifth, Sixth and

---

[1] The underlying disability for the last count was Petitioner's then-pending indictment for multiple drug-related felonies in Franklin County on which Petitioner was separately convicted.

2

Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, as a consequence of the trial court admitting hearsay testimony of a recorded statement by Appellant's minor son under Evid.R. 803(5) as a past recollection recorded.

5. Appellant was deprived of his constitutional rights to due process in violation of the Fifth, Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, as a consequence of the court denying him a meaningful opportunity to present a complete defense.

6. Appellant was deprived of his constitutional rights to due process in violation of the Sixth and Fourteenth Amendments to the United States Constitution and Section 10, Article I of the Ohio Constitution, as a consequence of ineffective assistance of counsel.

(Appellant's Brief, State Court Record, ECF No. 5, Ex. 14). The Third District affirmed the conviction. *State v. Nurein*, 2022-Ohio-1711 (Ohio App. 3d Dist. May 23, 2022)(copy at ECF No. 5, Ex. 16). Nurein then represented by retained counsel appealed to the Supreme Court of Ohio pleading the following propositions of law:

1. A defendant is denied due process and his right to confront his accusers, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Section 10, Article I of the Ohio Constitution, when the trial court admits the witness' hearsay testimony in the form of a prior recorded statement [without] establishing the proper foundation for a hearsay exception.

2. Defendant is denied due process, as guaranteed by the Fifth and Fourteenth Amendments to the U.S. Constitution and Section 10, Article I of the Ohio Constitution, when the trial court, on the State's motion, calls the victim as a court witness, in the absence of compelling circumstances warranting such extraordinary conduct, thereby permitting the State to employ leading questions in a manner that is prejudicial to the Defendant.

3. Defendant is denied due process and effective assistance of counsel, as guaranteed by the Fifth, Sixth and Fourteenth Amendments to the U.S. Constitution and Section 10, Article I

of the Ohio Constitution, when the trial court acts to prevent the Defendant from presenting a meaningful defense.

4. Defendant is denied effective assistance of counsel, as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution and Section 10, Article I of the Ohio Constitution, when counsel fails to object to obvious errors at trial, thereby raising the standard of appellate review to an insurmountable level for a Defendant to meet.

(Memorandum in Support of Jurisdiction, State Court Record, ECF No. 5, Ex. 18). The Ohio Supreme Court declined jurisdiction of the case. *State v. Nurein*, 167 Ohio St.3d 1527 (2022)(copy at State Court Record, ECF No. 5, Ex. 20).

Proceeding *pro se*, Nurein next filed his Petition in this case, pleading the following grounds for relief:

**Ground One**: The Petitioner was deprived of his Due Process rights when the trial court allowed the state to present hearsay testimony, in the form of a recorded statement of the state's only alleged "eyewitness", where the statement was allowed to be presented only after, and only because, the state failed to elicit testimony to the state's satisfaction, and after the witness was excused, in violation of Evidence Rule 803(5).

**Supporting Facts**: After the trial court determined the Petitioner's son competent to testify, the state called the Petitioner's son to testify, but failed to elicit the testimony the state wanted, so the state asked the trial court to permit it to play prerecorded statements under the "past recollection recorded" exception of Evidence Rule 803(5). The trial court permitted the state to play the hearsay recording for the jury despite the fact that nothing in the record suggests the witness "forgot", and there is no evidence within the record that the exception provided by Evidence Rule 803(5) applied, or that the hearsay was offered for any reason other than to supplement the state's failure to elicit sufficient testimony from the otherwise "competent" witness.

**Ground Two**: The Petitioner was deprived of his right to Due Process of law, and his right to confront witnesses, when the trial court (1) permitted the state to present recorded hearsay testimony without requiring the state to lay a foundation for the Evidence Rule 803(5) exception; and (2) where the trial court admitted the hearsay

4

recording, allowed it to be played for the jury rather than read into the record, and entered as evidence and submitted to the jury during deliberations, after cross-examination of the alleged "eyewitness" had been completed, precluding any possibility for the Petitioner to cross-examine the "witness" regarding the statements made in the recorded hearsay statements.

**Supporting Facts:** As stated in Ground 1, after the trial court determined the Petitioner's son competent to testify, the state called the Petitioner's son to testify, but failed to elicit the testimony the state wanted, so the state asked the trial court to permit it to play prerecorded statements under the "past recollection recorded" exception of Evidence Rule 803(5). (1) The trial court permitted the state to play the hearsay recording for the jury without requiring the state to lay the required foundation; and (2), the trial court improperly allowed it to be allowed it to be played for the jury rather than read into the record, admitted the recorded hearsay statement into evidence, and submitted to the jury during deliberations, although it was offered by the state as its on [sic] evidence, and not by the "adverse party" Petitioner, in direct violation of Evidence Rule 803(5); and only after the witness had been excused, precluding any cross-examination or confrontation of the witness.

**Ground Three**: The Petitioner was deprived of his Due Process rights, and right to Effective Assistance of Trial Counsel, when trial counsel permitted the state to present and play recorded hearsay statements alleged to have been made by the state's only claimed "eyewitness", and then permitted the trial court to admit the same recorded hearsay statements as evidence and submit them to the jury during deliberations, without objection.

**Supporting Facts:** The state trial court record shows trial counsel made no objection to this obvious violation of Evidence Rule 803(5), as well as the Petitioner's rights to Due Process and Confrontation.

**Ground Four**: The Petitioner was deprived of his right to Due Process of law when the trial court, on the state's motion, called the victim as a court's witness, - who does not speak English well, - and permitted the state to, in effect, testify for the witness, and mold her testimony by providing leading questions, where the witness was an exculpatory, rather than combative, witness, whose true and proper testimony, had it been allowed, was in opposition to the state's flawed theory of the case; and where the witness' true and proper testimony would have exonerated the Petitioner by showing someone else had committed the offense.

5

**Supporting Facts:** The state trial court record shows that the Petitioner's wife was not truly a "combative" witness. Rather, she simply did not want to testify in favor of the state's theory of the case. When the state could not get this witness to testify in the manner the state preferred, the state asked the trial court to call her as a court's witness, so the state could tailor and mold her testimony by asking leading questions and cutting her off when she attempted to clarify to her true meaning. Had her true testimony been allowed, the jury would have learned that she was an exculpatory witness; that an ex-boyfriend, Riann, had a history of committing the type of acts that form the basis of the charges against the Petitioner; and that she believed it was Riann, not the Petitioner, who was the offender.

**Ground Five**: The Petitioner was deprived of his Due Process rights, and right to Effective Assistance of Trial Counsel, when the trial court interfered with the Petitioner's ability to present a meaningful defense, and thereby deprived the Petitioner of his right to present his defense.

**Supporting Facts:** The state trial court record shows trial court cut off and prevented cross-examination of the Petitioner's son regarding the identity of the true offender when defense counsel asked the Petitioner's son if he meant Riann. When defense counsel attempted to question the victim about Riann's history of committing criminal acts against her, the state objected, and the trial court sustained the objection unless defense counsel could "show a current nexus", then cut off further questioning without having provided counsel with any opportunity to establish the nexus. The fact that trial counsel did not insist the trial court provide him that opportunity adds to the claim of ineffective assistance by adding his own ineffectiveness to that caused by the trial court.

**Ground Six:** The Petitioner was deprived of his Due Process rights, and right to Effective Assistance of Trial Counsel, when trial counsel failed to object to obvious errors, and thereby raised the standard of appellate review to a level that is essentially insurmountable.

**Supporting Facts:** In addition to the ineffective assistance of trial counsel mentioned in the Supporting Facts of Ground 5, the record shows that trial counsel failed to object to obvious errors, including the state's submission as evidence, and playing for the jury, of recorded hearsay statements; as well as the trial court's submission of the recordings to the jury during deliberations. This failure, i.e., ineffective assistance, of trial counsel not only prejudiced the

outcome of the trial, but prejudiced the appeal by raising the standard of appellate review to what essentially amounted to an insurmountable level.

**Ground Seven:** The Petitioner was deprived of his Due Process rights, and right to Effective Assistance of Trial Counsel, when trial counsel failed to object to obvious errors, and thereby raised the standard of appellate review to a level that is essentially insurmountable.

**Supporting Facts:** In addition to the ineffective assistance of trial counsel mentioned in the Supporting Facts of Grounds 5 and 6, the record shows that trial counsel failed to proffer evidence to support the Petitioner's intended defense that it was Riann who committed the offenses against the victim, rather than the Petitioner. In overruling the Assignment raising this error, the state Court of Appeals noted that the evidence was not in the record, essentially using counsel's ineffective assistance to deny relief, despite the fact that the trial court record shows that trial counsel failed, without argument or objection, to insist upon building the record when the state and trial court cut him off during witness questioning.

(Petition, ECF No. 1, PageID 19-21).

# Analysis

## Fair Presentation and Procedural Default

Respondent raises a procedural default defense to many of Petitioner's claims. The following principles of law apply.

Before obtaining federal habeas corpus review of his constitutional claims, a petitioner must exhaust available state court remedies by fairly presenting his or her claims to the state courts. 28 U.S.C. § 2254(b) and (c); *Picard v. Connor*, 404 U.S. 270, 275 (1971). To preserve a federal constitutional claim for presentation in habeas corpus, the claim must be "fairly presented" to the

state courts in a way which provides them with an opportunity to remedy the asserted constitutional violation, including presenting both the legal and factual basis of the claim. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Levine v. Torvik*, 986 F.2d 1506, 1516 (6th Cir.1993); *Riggins v. McMackin,* 935 F.2d 790, 792 (6th Cir. 1991). The claim must be fairly presented at every stage of the state appellate process. *Wagner v. Smith,* 581 F.3d 410, 418 (6th Cir. 2009).

A claim is fairly presented if the petitioner

> (1) relied upon federal cases employing constitutional analysis; (2) relied upon state cases employing federal constitutional analysis; (3) phrased the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleged facts well within the mainstream of constitutional law.

*Hand v. Houk,* 871 F.3d 390, 418 (6th Cir. 2017).

"Federal courts do not have jurisdiction to consider a claim in a habeas petition that was not 'fairly presented' to the state courts." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2004); accord, *Jacobs v. Mohr*, 265 F.3d 407, 415 (6th Cir. 2001); *McMeans v. Brigano*, 228 F.3d 674, 681, 674, 681 (6th Cir. 2000); *Fulcher v. Motley*, 444 F.3d 791, 798 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004).

> Principles of comity require that we not seek to upset a state court conviction on the basis of an alleged constitutional violation that the state court never had an opportunity to correct. *See Rose v. Lundy*, 455 U.S. 509, 518 (1982). "Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts." *Lyons v. Stovall*, 188 F.3d 327, 331–32 (6th Cir. 1999) (quoting *Picard v. Connor*, 404 U.S. 270, 276 (1971)). "[I]f an unexhausted claim would be procedurally barred under state law, that claim is procedurally defaulted for purposes of federal habeas review." *Awkal v. Mitchell*, 613 F.3d 629, 646 (6th Cir. 2010) (en banc) (quoting *Alley v. Bell*, 307 F.3d 380, 385 (6th Cir. 2002)).

*Allen v. Mitchell*, 953 F.3d 858 (6th Cir. 2020).

Merely using talismanic constitutional phrases like "fair trial" or "due process of law" does not constitute raising a federal constitutional issue. *Slaughter v. Parker,* 450 F.3d 224, 236 (6th Cir. 2006); *Franklin v. Rose,* 811 F.2d 322, 326 (6th Cir. 1987); *McMeans v. Brigano,* 228 F.3d 674, 681 (6th Cir. 2000), *citing Petrucelli v. Coombe*, 735 F.2d 684, 688-89 (2nd Cir. 1984). Mere use of the words "due process and a fair trial by an impartial jury" are insufficient. *Slaughter v. Parker*, 450 F.3d 224, 236 (6th Cir. 2006); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004)(same). "A lawyer need not develop a constitutional argument at length, but he must make one; the words 'due process' are not an argument." *Riggins v. McGinnis*, 50 F.3d 492, 494 (7th Cir. 1995).

If a petitioner's claims in federal habeas rest on different theories than those presented to the state courts, they are procedurally defaulted. *Williams v. Anderson,* 460 F.3d 789, 806 (6th Cir. 2006); *Lorraine v. Coyle*, 291 F.3d 416, 425 (6th Cir. 2002), *citing Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998); *Lott v. Coyle*, 261 F.3d 594, 607, 619 (6th Cir. 2001)("relatedness" of a claim will not save it).

A state prisoner ordinarily does not 'fairly present' a federal claim to a state court if that court must read beyond a petition, a brief, or similar papers to find material that will alert it to the presence of such a claim. *Baldwin v. Reese*, 541 U.S. 27 (2004).  When a defendant does so little to present his claim that it has not been fairly presented, then the presumption under *Harrington v. Richter* that the state court decided the claim on the merits is "fully rebutted." *Johnson v. Williams*, 568 U.S. 289 (2013).

The Sixth Circuit Court of Appeals requires a four-part analysis when the State alleges a habeas claim is precluded by procedural default. *Barton v. Warden, S. Ohio Corr. Facility,* 786 F.3d 450, 464 (6th Cir. 2015), *Guilmette v. Howes,* 624 F.3d 286, 290 (6th Cir. 2010)(*en banc*);

*Eley v. Bagley*, 604 F.3d 958, 965 (6th Cir. 2010); *Reynolds v. Berry*, 146 F.3d 345, 347-48 (6th

Cir. 1998), *citing Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Lott v. Coyle*, 261

F.3d 594, 601-02 (6th Cir. 2001); *Jacobs v. Mohr*, 265 F.3d 407, 417 (6th Cir. 2001).

> First the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule.
> . . . .
> Second, the court must decide whether the state courts actually enforced the state procedural sanction, citing *County Court of Ulster County v. Allen*, 442 U.S. 140, 149, 99 S.Ct. 2213, 60 L.Ed.2d 777 (1979).
>
> Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim.
>
> Once the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate under *Sykes* that there was "cause" for him to not follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); accord, *Hartman v. Bagley,* 492 F.3d 347, 357

(6th Cir. 2007), *quoting Monzo v. Edwards*, 281 F.3d 568, 576 (6th Cir. 2002). A habeas petitioner

can overcome a procedural default by showing cause for the default and prejudice from the asserted

error. *Atkins v. Holloway*, 792 F.3d 654, 657 (6th Cir. 2015).

**Ground One: Denial of Due Process by Allowing Past Recorded Statement**

Petitioner claims his rights under the Due Process Clause of the Fourteenth Amendment

were violated when the trial court allowed the State to play for the jury a video recording a

statement taken from his son K.A. at the scene of and shortly after the crime. Nurein procedurally

defaulted this claim because he did not fairly present it on direct appeal: there he claimed the trial

10

court violated his Sixth Amendment Confrontation Clause rights by allowing this evidence and here he relies on the Due Process Clause.

Petitioner has also procedurally defaulted on this claim because his attorney did not object to admission of K.A.'s statement. Nurein raised his claim about the recorded statement as his Fourth Assignment of Error on direct appeal and the Third District decided it as follows:

> **B. Fourth Assignment of Error: Did the trial court err by admitting video footage of K.A.'s statements to police?**
>
> {¶23} In his fourth assignment of error, Nurein argues that the trial court erred by admitting a police body camera video recording of statements K.A. made to law enforcement officers who responded to the shooting. In this video, K.A. tells Zahra to "tell the truth," identifies the shooter as Zahra's "old husband," "Mohamed," and states that "Mohamed" had banged on the apartment door. Nurein contends that this video was admitted in violation of his constitutional right to confront his accusers and that it also constituted inadmissible hearsay.
>
> **Applicable Law & Standard of Review**
>
> {¶24} "The Confrontation Clause to the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that ' "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." ' " *State v. Thomas*, 3d Dist. Marion No. 9-19-73, 2020-Ohio-5379, ¶ 17, quoting *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354 (2004), quoting the Confrontation Clause. The similar provisions of Section 10, Article I of the Ohio Constitution "provide[ ] no greater right of confrontation than the Sixth Amendment * * *." *State v. Self*, 56 Ohio St.3d 73, 79 (1990).
>
> {¶25} "Only testimonial hearsay implicates the Confrontation Clause." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 185. " '[T]estimonial statements are those made for "a primary purpose of creating an out-of-court substitute for trial testimony." ' " *Id.*, quoting *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 40, quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143 (2011). Statements qualify as testimonial if they have a "primary purpose" of "establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution." *Davis v. Washington*, 547

U.S. 813, 822, 126 S.Ct. 2266 (2006). The Confrontation Clause prohibits admission of testimonial hearsay statements made by a witness who does not appear at trial "unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness." *Maxwell* at ¶ 34, citing *Crawford* at 53-54.

{¶26} Even where the Confrontation Clause does not operate to prohibit the admission of a hearsay statement, the statement may nonetheless be inadmissible under the rules of evidence. *See State v. Nevins*, 171 Ohio App.3d 97, 2007-Ohio-1511, ¶ 36 (2d Dist.) ("[T]estimony may be admissible under the Confrontation Clause yet inadmissible under the rules of evidence, and vice versa * * *."). Under the rules of evidence, hearsay is generally inadmissible unless an exception to the hearsay rule applies. Evid.R. 802. "Evid.R. 803 is one such rule which permits the admission of certain hearsay statements even though the declarant is available as a witness." *Dayton v. Combs*, 94 Ohio App.3d 291, 300 (2d Dist.1993).

{¶27} In this case, K.A. testified but could not remember the statements he made to law enforcement officers on the morning of the shooting. As a result, the State sought to introduce the video recording of K.A.'s statements as a recorded recollection. Evid.R. 803 excludes the following from the hearsay rule:

> A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown by the testimony of the witness to have been made or adopted when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

Evid.R. 803(5).

{¶28} Nurein did not object to the admission of K.A.'s recorded statement either as a violation of his rights under the Confrontation Clause or as a violation of the hearsay rule. Consequently, we review the trial court's admission of K.A.'s recorded statement for plain error. *See Thomas*, 2020-Ohio-5379, at ¶ 16; *State v. Brown*, 3d Dist. Allen No. 1-19-61, 2020-Ohio-3614, ¶ 11. For plain error to apply, the trial court must have deviated from a legal rule, the error must have been an obvious defect in the proceeding, and the error must have affected a substantial right. *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). Under the plain-error standard, the appellant must

demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors. *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996), citing *State v. Moreland*, 50 Ohio St.3d 58, 63 (1990). We recognize plain error " 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " *State v. Landrum*, 53 Ohio St.3d 107, 111 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

**The trial court did not commit plain error by admitting the video footage of K.A.'s statements to police.**

{¶29} In this case, we need not decide whether the video recording was properly admitted under Evid.R. 803(5) or whether the recording was admitted in violation of Nurein's Confrontation Clause rights. Even assuming error in both respects, we conclude that the trial court did not commit plain error because Nurein cannot demonstrate that he was prejudiced by admission of the video recording.

{¶30} As Nurein himself points out, the evidence against him in this case was mostly circumstantial. Indeed, through his recorded statement, K.A. was the only person to clearly and directly identify Nurein as the shooter. Furthermore, Nurein has highlighted evidence that suggested that he could not have been the shooter, most notably testimony from Zahra that he was with her inside of the apartment when the shooting started. Nevertheless, even setting aside K.A.'s identification and giving due consideration to Zahra's potentially exculpatory testimony, there is overwhelming evidence demonstrating that Nurein was the shooter.

{¶31} First, while Nurein is correct that none of the other witnesses identified him in the courtroom as the shooter, there was testimony at least indirectly identifying him. Joe Stone, the 911 caller, and his sister, Brenda Stone, each testified that they were outside smoking cigarettes when they witnessed a man discharge a firearm into one of the apartments. (May 10, 2021 Tr., Vol. II, at 46-47, 51, 64-66, 69). Joe and Brenda each described the shooter in similar terms—a Black male, between 5'7" and 5'9", wearing blue and black clothing. (May 10, 2021 Tr., Vol. II, at 49, 53, 65). Although Joe stated that he did not see the man law enforcement officers arrested when they arrived at the apartment complex, Brenda testified that she did see the arrestee and that the arrestee was the person she had seen shoot the gun into the apartment. (May 10, 2021 Tr., Vol. II, at 49, 67-68). There is no dispute that Nurein was the person arrested at the apartment complex on the morning of February 13, 2021.

13

Therefore, through Brenda's testimony, Nurein was identified as the shooter, albeit circuitously.

{¶32} Furthermore, Nurein's conduct after he was detained served as further proof that he was the shooter. At trial, the State presented a video recording depicting Nurein in the backseat of the police vehicle shortly after he was detained. In the video, an officer informs Nurein that he will be taken to the police station where his hands will be swabbed to test for the presence of gunshot residue. (State's Ex. 70). Nurein can then be seen licking the palm of his left hand and rubbing his hands together for approximately five seconds. (State's Ex. 70). Apart from being the basis for his tampering-with-evidence charge, efforts like Nurein's to " 'alter or destroy evidence * * * can serve as admissions by conduct of a consciousness of guilt' " and thus of guilt itself. *State v. Brodbeck*, 10th Dist. Franklin No. 08AP-134, 2008-Ohio-6961, ¶ 48, quoting *State v. Brown*, 8th Dist. Cuyahoga No. 52593, 1988 WL 86965, *3 (July 28, 1988); *Brodbeck* at ¶ 44.

{¶33} Finally, substantial physical evidence points to Nurein being the shooter. The evidence at trial showed that Nurein was taken into custody immediately after exiting Zahra's white SUV, and no evidence was presented suggesting that anyone other than Nurein had been inside of the vehicle in the minutes preceding Nurein's arrest. Moments after Nurein was detained, a 9 mm handgun and a live 9 mm round were recovered from inside of Zahra's white SUV and a second live 9 mm round was collected nearby. A bullet, a bullet fragment, and a spent shell casing were then obtained from inside of Zahra's apartment and from the area surrounding Zahra's apartment. Zahra testified that the bullet holes corresponding to the recovered bullet and bullet fragment had not been there before the morning of February 13, 2021. (May 10, 2021 Tr., Vol. II, at 117). The live 9 mm rounds recovered in and around Zahra's white SUV had the same markings as the spent shell casing found outside of Zahra's apartment. (May 11, 2021 Tr., Vol. I, at 39). Moreover, analysis by the Ohio Bureau of Criminal Investigation ("BCI") identified the bullet, bullet fragment, and spent shell casing as having been fired from the 9 mm handgun located in Zahra's white SUV. (May 11, 2021 Tr., Vol. I, at 123-125, 129, 132); (State's Ex. 63). BCI also tested samples taken from Nurein's hands after his arrest, which came back positive for the presence of gunshot residue. (May 11, 2021 Tr., Vol. I, at 106-109); (State's Ex. 51).

{¶34} In light of the totality of the evidence in the record, we cannot conclude that the outcome of Nurein's trial clearly would have been different had K.A.'s recorded statements not been admitted as

14

evidence. At trial, Brenda effectively identified Nurein as the shooter, and evidence was presented showing that in the moments following his arrest, Nurein acted in a manner suggesting his awareness of his guilt. Furthermore, the evidence indicated that the bullet holes observed on Zahra's apartment were made on the morning of February 13, 2021, rather than some earlier time. The evidence also tied Nurein directly to the handgun that fired the bullets that created those holes, and the results of the gunshot residue testing lent significant support for a conclusion that Nurein was the person who fired that handgun. Accordingly, we conclude that the trial court did not commit plain error by admitting the video recording of K.A.'s statements.

{¶35} Nurein's fourth assignment of error is overruled.

*State v. Nurein,* 2022-Ohio-1711 (Ohio App. 3d Dist. May 23, 2022).

The Third District found Nurein had forfeited this claim on appeal because his attorney did not object. Ohio has a relevant procedural rule which requires a contemporaneous objection to trial court error. *State v. Glaros*, 170 Ohio St. 471 (1960), paragraph one of the syllabus; *see also State v. Mason*, 82 Ohio St. 3d 144, 162 (1998). The Third District enforced that rule by engaging in only plain error review of the merits. An Ohio state appellate court's review for plain error is enforcement, not waiver, of a procedural default. *Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Jells v. Mitchell,* 538 F.3d 478, 511 (6th Cir. 2008); *Lundgren v. Mitchell,* 440 F.3d 754, 765 (6th Cir. 2006); *White v. Mitchell,* 431 F.3d 517, 525 (6th Cir. 2005); *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005); *Hinkle v. Randle*, 271 F.3d 239 (6th Cir. 2001).

Ohio's contemporaneous objection rule has been repeatedly held by the Sixth Circuit to be an adequate and independent state ground of decision. *Wogenstahl v. Mitchell*, 668 F.3d 307, 334 (6th Cir. 2012), *citing Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir. 2010); *Nields v. Bradshaw*, 482 F.3d 442 (6th Cir. 2007); *Biros v. Bagley,* 422 F.3d 379, 387 (6th Cir. 2005); *Mason v. Mitchell*, 320 F.3d 604 (6th Cir. 2003), *citing Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir.

2001); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000), *citing Engle v. Isaac,* 456 U.S. 107, 124-29 (1982). *See also Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000); *Goodwin v. Johnson*, 632 F.3d 301, 315 (6th Cir. 2011); *Smith v. Bradshaw*, 591 F.3d 517, 522 (6th Cir.), *cert. denied*, 562 U.S. 876 (2010).

Under *Maupin* a procedural default can be excused if a petitioner can show cause and prejudice. Ineffective assistance of trial counsel will act as excusing cause, but only if that claim is itself not procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446 (2000). Nurein claimed on direct appeal as part of his Fourth Assignment of Error that his attorney's failure to object to admission of K.A.'s recorded statement constituted ineffective assistance of trial counsel. The Third District denied that claim. Applying the controlling federal constitutional standard for ineffective assistance of counsel from *Strickland v. Washington,* 466 U.S. 668 (1984), it noted that it had found admission of K.A.'s statement did not prejudice Nurein in that its exclusion would not likely have changed the result of the trial. *Nurein, supra*, at ¶ 60.

When a state court decides on the merits a federal constitutional claim later presented to a federal habeas court, the federal court must defer to the state court decision unless that decision is contrary to or an objectively unreasonable application of clearly established precedent of the United States Supreme Court. 28 U.S.C. § 2254(d)(1); *Harrington v. Richter*, 562 U.S. 86 (2011); *Brown v. Payton,* 544 U.S. 133, 140 (2005); *Bell v. Cone*, 535 U.S. 685, 693-94 (2002); *Williams (Terry) v. Taylor,* 529 U.S. 362, 379 (2000). Deference is also due under 28 U.S.C. § 2254(d)(2) unless the state court decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

The Third District's decision of Nurein's ineffective assistance of trial counsel claim is neither contrary to nor an objectively unreasonable application of *Strickland*. Although K.A. was

the only witness to identify Nurein as the shooter from having seen him, there was a great deal of additional circumstantial evidence of identification:  for example, forensic evidence with the bullets and Nurein's incriminatory licking of his hand when he was told he would be given a gunshot residue test.

Petitioner's First Ground for Relief is procedurally defaulted and should be dismissed on that basis.

**Ground Two:  Deprivation of Due Process and Confrontation Clause Rights by Admission of K.A.'s Recorded Statement**

Ground Two should be dismissed as procedurally defaulted on the same basis as Ground One.

**Ground Three:  Denial of Effective Assistance of Trial Counsel**

As noted above in the analysis of Ground One, the Third District's decision that trial counsel did not provide ineffective assistance is neither contrary to nor an objectively unreasonable application of *Strickland* and it is therefore entitled to deference under 28 U.S.C. § 2254(d)(1). Ground Three should be dismissed on the merits.

**Ground Four:  Deprivation of Due Process by Allowing Victim to be Called as Court's Witness**

In his Fourth Ground for Relief, Petitioner claims he was denied due process of law when, on the State's motion, the court called Zahra, Nurein's ex-spouse and one of the victims, as a court

witness and then allowed her to be examined with leading questions.  He also claims that had Zahra been permitted to testify as she wanted, she would have identified the offender as her current boyfriend, Riann[2].  Petitioner raised this claim as his Third Assignment of Error on direct appeal and the Third District decided it as follows:

### A. Third Assignment of Error: Did the trial court abuse its discretion by calling Zahra as a court's witness pursuant to Evid.R. 614?

{¶15} In his third assignment of error, Nurein argues that the trial court abused its discretion by calling Zahra as a court's witness. Nurein maintains that it was inappropriate to call Zahra as a court's witness because there was no indication that Zahra was going to testify in a manner inconsistent with her earlier statements to law enforcement officers. Nurein contends that the State simply did not like Zahra's anticipated testimony that he was not the shooter and that the State's request that Zahra be called as a court's witness was a subterfuge intended to permit the State to cross-examine what should have been its own witness.

### i. Applicable Law & Standard of Review

{¶16} Under Evid.R. 614(A), "[t]he court may, on its own motion or at the suggestion of a party, call witnesses, and all parties are entitled to cross-examine witnesses thus called." "The purpose of calling a witness as a court's witness is to allow for a proper determination in a case where a witness is reluctant or unwilling to testify, or there is some indication that the witness's trial testimony will contradict a prior statement made to police." *State v. Baskin*, 3d Dist. Allen No. 1-18-23, 2019-Ohio-2071, ¶ 39. " ' "A witness whose appearance is important to the proper determination of the case, but who appears to be favorable to the other party, is a principal candidate for application of Evid.R. 614(A).' " *State v. Renner*, 2d Dist. Montgomery No. 25514, 2013-Ohio-5463, ¶ 23, quoting *State v. Curry*, 8th Dist. Cuyahoga No. 89075, 2007-Ohio-5721, ¶ 18.

{¶17} The decision whether to call a witness as a court's witness under Evid.R. 614(A) is within the trial court's discretion and will be reversed only for an abuse of that discretion. *Baskin* at ¶ 40. An abuse of discretion is more than a mere error in judgment; it suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

---

[2] Alternatively spelled "Riyann" in the Court of Appeals opinion.

### ii.    The trial court did not abuse its discretion by calling Zahra as a court's witness.

{¶18} Nurein argues that it is appropriate to utilize Evid.R. 614(A) when the witness is unwilling or reluctant to testify, when the witness is likely to provide unexpectedly damaging testimony, or when it is expected that the witness's testimony will contradict prior statements made to police. However, Nurein claims that none of these circumstances existed here because Zahra was not so much unwilling or reluctant to testify as she was "simply not amenable with the theory that the State had invented against [Nurein]." Nurein notes that Zahra had always maintained that he was not the shooter and thus her expected exculpatory testimony could not be inconsistent with her prior statements. He also contends that Zahra had always been cooperative with the State, but that the State "did not like her version of the truth."

{¶19} Notwithstanding Nurein's arguments, this case presented a textbook occasion for application of Evid.R. 614(A). In support of its request to have Zahra called as a court's witness, the State represented that Nurein had called Zahra while he was incarcerated in the Tri-County Regional Jail and that Zahra and her brother had visited Nurein's defense counsel at his office. The State also submitted screenshots of text messages exchanged between Zahra and a Union County victim advocate. In the first text message, the victim advocate informed Zahra that the prosecutor wanted to meet with her and K.A. and asked whether Zahra and K.A. would be available to meet with the prosecutor at a particular date and time. Zahra responded, "Hey don't want to speak to you please speak to my husband lawyer about anything that concerns me and his case * * *." In reply, the victim advocate advised Zahra that she and K.A. would be required to attend Nurein's trial and that, should she change her mind, the prosecutor would still be available to meet with her beforehand. Zahra then sent the advocate the following series of messages: "Speak to my lawyer thank you," "Notify him with this information," "This is so unprofessional and unjust please notify my lawyer," and "Thank you and have a great day won't be responding anymore bye."

{¶20} At a pretrial hearing on the State's request, the State further explained that "despite [the] court's order not to have contact with [Zahra], [Nurein] has had multiple contacts with her including a phone call where she was crying and screaming." (May 5, 2021 Tr. at 4). The State indicated that there had been 189 phone calls between Zahra and Nurein. Moreover, although the State

acknowledged that Zahra committed to attend Nurein's trial, the State represented that she had been reluctant and not "cooperative in terms of trial preparation or with law enforcement." (May 5, 2021 Tr. at 5).

{¶21} Based on the State's submissions, it is clear that Zahra, whose testimony was essential to the proper determination of the case, was partial in favor of Nurein. *See Renner*, 2013-Ohio-5463, at ¶ 23. Zahra is Nurein's ex-wife and the mother of two of Nurein's children, and she remained in frequent (and forbidden) contact with Nurein throughout the months leading up to trial. Furthermore, Zahra willingly communicated with Nurein's defense counsel, and in fact appeared to regard Nurein's defense counsel as her own attorney, while simultaneously rejecting the State's offers to talk to her and K.A. Under these circumstances, it was not an abuse of discretion for the trial court to call Zahra as a court's witness under Evid.R. 614(A). *See State v. Adkins*, 8th Dist. Cuyahoga No. 108737, 2020-Ohio-1618, ¶ 63-65 (application of Evid.R. 614(A) appropriate where witness had an ongoing relationship with the defendant, spoke with the defendant on the phone hundreds of times after the defendant's arrest, and willingly met with defense counsel while refusing to meet with the prosecution); *State v. Croom*, 2d Dist. Montgomery No. 25094, 2013-Ohio-3377, ¶ 77 (application of Evid.R. 614(A) appropriate where the witnesses "maintained relationships with their respective boyfriends at the time of trial, and they were being asked to provide incriminating testimony against those boyfriends").

{¶22} Nurein's third assignment of error is overruled.

*State v. Nurein, supra.*

The Magistrate Judge first concludes that this claim was not fairly presented to the Third District as a constitutional claim and is therefore procedurally defaulted. The Third District framed its decision, just quoted, as a determination of Ohio evidence law, to wit, did the trial judge abuse his discretion in allowing Zahra to be called as a court witness. See ¶ 15. Abuse of discretion is not a constitutional violation. *Sinistaj v. Burt,* 66 F.3d 804 (6th Cir. 1995). Although Nurein's appellate counsel mentioned "due process" in the wording of the Third Assignment, he argued the assignment purely in terms of abuse of discretion and cited no federal constitutional law. See

Appellant's Brief, State Court Record, ECF No. 5, Ex. 14, PageID 173-79.  Because Nurein did not fairly present this claim as a constitutional claim to the state courts, it should be dismissed as procedurally defaulted.

Ground Four should also be dismissed for failure to state a claim upon which habeas corpus relief can be granted.  Federal habeas corpus is available only to correct federal constitutional violations.  28 U.S.C. § 2254(a); *Wilson v. Corcoran,* 562 U.S. 1 (2010)*; Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *Smith v. Phillips*, 455 U.S. 209 (1982), *Barclay v. Florida,* 463 U.S. 939 (1983). "[I]t is not the province of a federal habeas court to reexamine state court determinations on state law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); see also *Elmendorf v. Taylor*, 23 U.S. (10 Wheat.) 152, 160 (1825)(Marshall C. J.); *Bickham v. Winn*, 888 F.3d 248 (6th Cir. Apr. 23, 2018)(Thapar, J. concurring).

Errors in the application of state evidence law are not violations of the Due Process Clause:

> With regard to evidentiary rulings, the standard for habeas relief is not easily met. "[F]ederal habeas courts review state court evidentiary decisions only for consistency with due process." *Coleman v. Mitchell,* 268 F.3d 417, 439 (6th Cir. 2001). "A state court evidentiary ruling will be reviewed by a federal habeas court only if it were so fundamentally unfair as to violate the petitioner's due process rights." *Coleman v. Mitchell,* 244 F.3d 533, 542 (6th Cir. 2001). Moreover, such rulings "are usually not to be questioned in a federal habeas corpus proceeding." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir.1988)). Even if errors are made in the application of state law, "[such] errors . . . especially with regard to the admissibility of evidence, are usually not cognizable in federal habeas corpus." *Walker v. Engle,* 703 F.2d 959, 962 (6th Cir.), cert. denied, 464 U.S. 962, 104 S. Ct. 396, 78 L. Ed. 2d 338 (1983). If a ruling is especially egregious and "results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh v. Mitchell,* 329 F.3d 496, 512 (6th Cir 2003) (citing *Coleman,*

> 244 F.3d at 542). Importantly, however, as a general matter, "state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour*, 224 F.3d at 552 (quoting *Montana v. Egelhoff,* 518 U.S. 37, 43, 116 S. Ct. 2013, 135 L. Ed. 2d 361 (1996)). Ultimately, states have wide latitude with regard to evidentiary matters under the Due Process Clause. *Id.*

*Wilson v. Sheldon,* 874 F.3d 470, 475-76 (6th Cir. 2017).

As part of this Ground for Relief, Petitioner asserts that if Zahra had been permitted to testify to what she believed the truth to be, she would have identified Riann as the offender. Nurein offered no proof of this asserted fact in the Third District and that court commented that there was no record to that effect. *State v. Nurein, supra,* at ¶ 14. Under Ohio law any evidence of what Zahra would have testified to would have to be added to the record by way of a petition for post-conviction relief under Ohio Revised Code § 2953.21. The State Court Record shows Nurein has not filed such a proceeding and he would now be barred from doing so by the relevant statute of limitations, Ohio Revised Code § 2953.23. Nor can he add it to the record in federal court; we are bound to consider only the record created in the state courts. *Cullen v. Pinholster,* 563 U.S. 170 (2011).

Petitioner's Fourth Ground for Relief should therefore be dismissed as procedurally defaulted and non-cognizable in habeas.

**Ground Five: Denial of Right to Present a Defense**

In his Fifth Ground for Relief, Petitioner claims the trial court denied him due process preventing him from presenting a complete defense by cutting off his counsel's cross-examination of K.A. and Zahra which was intended to advance his theory that Riann was the actual offender.

Petitioner presented this claim as his Fifth Assignment of Error on direct appeal and the Third

District decided it as follows:

> {¶36} In his fifth assignment of error, Nurein argues the trial court violated his constitutional rights by preventing him from presenting a complete defense. Specifically, Nurein claims the trial court prohibited him from pursuing lines of cross-examination that would have demonstrated that an alternative suspect, Zahra's ex-boyfriend, Riyann, had violently confronted Zahra in the past and had possibly done so again.

### i. Applicable Law

{¶37} As the Supreme Court of Ohio has explained:

> "[T]he Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense.' " *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S.Ct. 2142, 90 L.Ed.2d 636 (1986), quoting *California v. Trombetta*, 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). However, "[a] defendant's right to present relevant evidence is not unlimited, but rather is subject to reasonable restriction." *United States v. Scheffer*, 523 U.S. 303, 308, 118 S.Ct. 1261, 140 L.Ed.2d 413 (1998). And states have a legitimate interest in ensuring that triers of fact are presented with reliable evidence and have "broad latitude under the Constitution to establish rules excluding evidence from criminal trials" to further that goal. *Scheffer* at 308, 309, 118 S.Ct. 1261, 140 L.Ed.2d 413. Such "rules do not abridge an accused's right to present a defense so long as they are not 'arbitrary' or 'disproportionate to the purposes they are designed to serve' " and if they do not "infringe[ ] upon a weighty interest of the accused." *Id.* at 308, 118 S.Ct. 1261, 140 L.Ed.2d 413, quoting *Rock v. Arkansas*, 483 U.S. 44, 56, 58, 107 S.Ct. 2704, 97 L.Ed.2d 37 (1987).

*State v. Wesson*, 137 Ohio St.3d 309, 2013-Ohio-4575, ¶ 59.

{¶38} " 'A complete defense' may include evidence of third-party guilt." *State v. Gillispie*, 2d Dist. Montgomery Nos. 22877 and 22912, 2009-Ohio-3640, ¶ 120, citing *Holmes v. South Carolina*, 547 U.S. 319, 126 S.Ct. 1727 (2006). But in making such a defense, the accused "must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the

ascertainment of guilt and innocence." *Chambers v. Mississippi*, 410 U.S. 284, 302, 93 S.Ct. 1038 (1973). Thus, "criminal defendants do not necessarily have a right to present *all* evidence of third-party guilt." (Emphasis sic.) *State v. Jones*, 2d Dist. Montgomery No. 27354, 2018-Ohio-2332, ¶ 33.

{¶39} "[I]t is widely accepted that evidence introduced to prove that another person may have committed the crime with which the defendant is charged ' "may be excluded where it does not sufficiently connect the other person to the crime, as, for example, where the evidence is speculative or remote, or does not tend to prove or disprove a material fact in issue at the defendant's trial[.]" ' " *Id.* at ¶ 34, quoting *Holmes* at 327, quoting 40A American Jurisprudence 2d, Homicide, Section 286 (1999). " ' "[F]requently matters offered in evidence for [the purpose of showing third-party guilt] are so remote and lack such connection with the crime that they are excluded." ' " *Id.*, quoting *Holmes* at 327, quoting 41 Corpus Juris Secundum, Homicide, Section 216 (1991).

### iii.    Nurein was not deprived of his right to present a complete defense.

{¶40} Nurein identifies two instances in which the trial court purportedly limited his cross-examination of witnesses in a way that deprived him of the opportunity to fully present his third-party-guilt defense. The first occurred while his trial counsel was cross-examining Zahra:

> [Nurein's Counsel]: Do you know – did you date a man named Riyann?
>
> [Zahra]: Yes.
>
> * * *
>
> [Nurein's Counsel]: Did you have problems with Riyann?
>
> [Zahra]: Yeah.
>
> [Nurein's Counsel]: Okay, what kind of problems with Riyann?
>
> [Prosecutor]: Object to the relevance, Your Honor.
>
> [Trial Court]: (Inaudible)

24

[Nurein's Counsel]: Yeah, I think it is relevant. Um, there's a prior incident I want to get – I'll rephrase the question, Your Honor.

\* \* \*

[Nurein's Counsel]: Was there an incident in September between you and Riyann?

[Zahra]: Yeah, September 9th or 8th, yeah.

[Nurein's Counsel]: Okay. Were you – were you assaulted?

[Prosecutor]: Object, Your Honor.

[Zahra]: Yeah.

[Trial Court]: I'm going to sustain the objection unless you can show –

[Zahra]: Yeah.

[Trial Court]: -- a current nexus. Don't answer the question.

[Nurein's Counsel]: All right, but there was an incident in September?

[Zahra]: There was incident and –

[Trial Court]: I sustained his objection on this.

[Nurein's Counsel]: When was the last time you had contact with Riyann?

[Zahra]: Oh, he – he been texting me, like, couple days later when he text me and he send me information about this case or something.

[Nurein's Counsel]: He sent you information about this case?

[Zahra]: Yeah.

[Nurein's Counsel]: So, he's been – he's staying with you while this case has been going on?

25

[Zahra]: Yeah.

[Nurein's Counsel]: Is that on your cell phone?

[Zahra]: Yeah.

[Nurein's Counsel]: Is that what you showed me when we met last Saturday?

[Zahra]: Yeah, the one I show you.

[Prosecutor]: Object, Your Honor.

[Trial Court]: Sustained.

[Zahra]: Yeah, exactly.

[Trial Court]: The jury will disregard that answer and the question.

(May 10, 2021, Tr., Vol. II, at 112-113).

{¶41} The second instance occurred while K.A. was being cross-examined regarding his video-recorded statements:

[Nurein's Counsel]: Hi, [K.A.]. How are you? You said it was your mom's old boyfriend [that shot at Zahra's apartment]. Does she have an old boyfriend that you remember? Is that a yes? Do you know that old boyfriend's name?

[K.A.]: Mohamed.

[Nurein's Counsel]: Mohamed. It's not Riyann?

[Trial Court]: Asked and answered. Are you through with the witness then?

[Prosecutor]: I am, Your Honor.

[Trial Court]: You have no questions, [Nurein's trial counsel], of [K.A.] before the jury?

[Nurein's Counsel]: No, Your Honor.

(May 10, 2021 Tr., Vol. II, at 130).

26

{¶42} After reviewing the record, we conclude that the trial court did not deprive Nurein of his right to present a complete defense by sustaining the State's objections and limiting his cross-examination of Zahra and K.A. With respect to Zahra, it is clear that the trial court did not entirely foreclose Nurein from asking questions about Riyann or the alleged September incident. Rather, consistent with the well-established rule that evidence offered for the purpose of showing third-party guilt must sufficiently connect the third party to the crime, the trial court simply required that Nurein establish a direct link between the alleged September incident and the shooting. For instance, testimony about the alleged September incident might have been relevant if Nurein elicited evidence that Riyann continued to harass Zahra up until February 2021 or if the alleged September incident represented one in a series of confrontations between Zahra and Riyann potentially culminating in the shooting. The trial court afforded Nurein an opportunity to attempt to draw such a connection through appropriate cross-examination, but his trial counsel did not pose questions tailored to that purpose, and in any event, it is unclear whether there even existed facts to warrant such questioning. Again, when presenting a defense, the defendant is subject to the rules of evidence and procedure, including the trial court's broad discretion to "impose reasonable limits on cross-examination based on a variety of concerns, such as * * * marginally relevant interrogation." *State v. Treesh*, 90 Ohio St.3d 460, 480 (2001); Evid.R. 611(B). Here, given that the trial court gave Nurein some chance to connect the alleged September incident to the shooting, the trial court did not abuse its discretion so as to deprive Nurein of his right to present a full and meaningful defense.

{¶43} The same is true with respect to the cross-examination of K.A. Nurein's trial counsel cross-examined K.A. about K.A.'s video-recorded identification of Nurein as the shooter. Nurein's trial counsel asked K.A. the name of the "old boyfriend" K.A. was referring to in the video, and K.A. responded that it was "Mohamed." Thus, when the trial court intervened after Nurein's trial counsel asked K.A. whether the name of the "old boyfriend" was Riyann, the trial court was correct that the question had already been asked and answered. Unfortunately for the defense, K.A.'s answer was an identification of Nurein as the shooter, not the former boyfriend. However, nowhere did the trial court indicate that Nurein would not be permitted to ask K.A. any questions about Riyann. Instead of running the risk of asking K.A. additional questions about Riyann, Nurein's trial counsel opted to not question K.A. in front of the jury. Therefore, insofar as Nurein might have been denied the

opportunity to elicit testimony about Riyann from K.A., the fault does not lie with the trial court.

{¶44} Nurein's fifth assignment of error is overruled.

*State v. Nurein, supra.*

Petitioner presented his Fifth Assignment of Error as a constitutional claim and the Third District decided it on the merits. Nurein's burden in habeas, then, is to show this decision was contrary to or an objectively unreasonable application of clearly established Supreme Court precedent. The only authority on which he relies is *Faretta v. California,* 422 U.S. 806, 835 (1975), which protects the right of a defendant to represent himself in court. *Faretta* is completely inapposite to a claim that a defendant was prevented from presenting a complete defense. Nurein never asked to discharge his attorney and proceed without counsel.

Nor has Petitioner shown any prejudice from the trial court's cutting short the cross-examination because he has never proffered that K.A. or Zahra would have identified Riann as the offender. Prima facie, some dispute between Zahra and Riann in September does not show Riann was the likely offender in February of the following year. As the Third District held, an alternative suspect theory must show some probable connection of the alternative suspect with the actual crime, not that the victim has at sometime in the past dated another violent boyfriend.

Few rights are more fundamental than that of an accused to present witnesses in his own defense. *Chambers v. Mississippi,* 410 U.S. 284, 302 (1973)(citations omitted). However, a defendant must comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence. *Id.* Judges have a wide discretion to exclude evidence which is only marginal. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). Petitioner has not shown that any additional evidence from either K.A. or Zahra would have been anything other than marginal. Ground Five for Relief should therefore be dismissed on

28

the merits.

**Grounds Six and Seven:  Ineffective Assistance of Trial Counsel**

In his Sixth and Seventh Grounds for Relief, Petitioner claims he received ineffective assistance of trial counsel when his attorney did not object to the submission of K.A.'s recorded statement to the jury and its being sent to the jury for deliberations, as well as failing to proffer the testimony Zahra would have given about Riann.  As noted above, the Third District held there was no prejudice such as is required by the second prong of *Strickland* because admission of K.A.'s recorded statement was proper and what Zahra would have testified to had not been proffered. Neurein complains that counsel's ineffectiveness in failing to proffer has been, in a way, bootstrapped into denying this claim.  But he has forfeited his own opportunity to supplement the record by submitting a proffer in a post-conviction proceeding.  To put it another way, even if this Court were reviewing Petitioner's ineffective assistance of trial counsel claim *de novo*, rather than with AEDPA deference, it could not find in Petitioner's favor because there is still no proffer of the hypothesized testimony of K.A. or Zahra.

Petitioner's Sixth and Seventh Grounds for Relief should therefore be dismissed.

**Conclusion**

Based on the foregoing analysis, the Magistrate Judge respectfully recommends the Petition herein be dismissed with prejudice.  Because reasonable jurists would not disagree with this conclusion, it is also recommended that Petitioner be denied a certificate of appealability and

that the Court certify to the Sixth Circuit that any appeal would be objectively frivolous and should

not be permitted to proceed *in forma pauperis*.

March 7, 2024.

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Because this document is being served by mail, three days are added under Fed.R.Civ.P. 6, but service is complete when the document is mailed, not when it is received. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to another party's objections within fourteen days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. #

s/ *Michael R. Merz*
United States Magistrate Judge